UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                     <u>For Online Publication Only</u>
-----------------------------------------------------------------X
DONNELL FESTUS,

                      Petitioner,

              -against-                                     **MEMORANDUM AND ORDER**
                                         17-CV-3941 (JMA)
JOSEPH H. NOETH,

                    Respondent.
-----------------------------------------------------------------X

**APPEARANCES:**

Donnell Festus
        <u>Pro</u> <u>se</u> Petitioner

Michael J. Miller, Assistant District Attorney
Suffolk County District Attorney's Office
200 Center Drive
Riverhead, NY 11901
        *Attorneys for Respondent*

**AZRACK, United States District Judge:**

On July 8, 2010, following a jury trial in state court, Donnell Festus ("Festus") was convicted of one count of Murder in the First Degree, one count of Murder in the Second Degree, and one count of Conspiracy in the Second Degree. On September 1, 2010, Festus was sentenced to life imprisonment without parole on the Murder in the First Degree count, twenty-five years of imprisonment to life on the Murder in the Second Degree count, and eight-and-one-third years to twenty-five years of imprisonment on the Conspiracy in the Second Degree count, with all sentences to run concurrently.

Festus, proceeding <u>pro</u> <u>se</u>, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising various grounds for relief. For the following reasons, all of Festus's

proffered grounds are either procedurally barred or without merit.   Therefore, the petition is DENIED in its entirety.

The following facts are taken from the petition and the state court record.[1]

## A. <u>Factual Background</u>

The evidence at trial showed that on October 20, 2008, Festus shot and killed James DiMartino as part of a murder for hire plot orchestrated by Ronald Thorton, Monique Randall, Donovan Raysor, and Festus.  DiMartino was an attorney who represented Thorton, and was also business partners with Thorton in private money lending.  (Tr-1 100.)  At approximately 12:30 p.m. on October 20, 2008, DiMartino left his home in his white Lexus SUV for a scheduled business meeting with Thorton at Sil la Joung, a Chinese restaurant, located in Commack, New York.  (Tr-1 114-15.)  When DiMartino arrived in the Sil la Joung parking lot, Festus was there and shot DiMartino in the head, killing him.

Randall testified at trial about planning and executing the conspiracy to murder DiMartino.  Randall worked at a strip club called Shady Al's, an establishment frequented by Thorton.  (Tr-2 20-22.)  One evening, Thorton spoke privately with Randall and asked her if she could get him a firearm with a silencer, and that he needed some guys to "do a job at five-thousand dollars" each.  (Tr-2 23.)  Randall told Thorton she thought she could get him the gun, but that she needed some time.  (Tr-2 23.)

After her shift ended, Randall went home to St. Albans, Queens, and spoke with her boyfriend, Raysor.  (Tr-2 23-24.)  Although Raysor told Randall he wouldn't kill anyone for

---

[1] The trial transcript of <u>People v. Festus</u> includes three separately numbered sets of trial minutes.  First, a <u>Huntley</u>/<u>Wade</u> hearing was held on March 22, 23, and 25, 2010, and is referred to herein as "H'rg Tr."  The first set of trial minutes includes jury selection, which took place during June 14-17, 2010, and is not referenced herein. "Tr-1" refers to the trial minutes which took place during June 21-23, 2010, and "Tr-2" refers to the trial minutes from June 25, 2010 through July 9, 2010. "S." refers to the transcript for the sentencing proceedings, <u>People v. Festus</u>, which was held on September 1, 2010.

money, Randall convinced him to meet with Thorton.  (Tr-2 24.)  On October 17, 2008, three days before the murder, Randall, Raysor, and Thorton had lunch together in Queens.  (Tr-2 25.) After lunch, Raysor and Thorton spoke privately while Randall waited in Thorton's car, a pearl white BMW.  (Tr-2 25-28.)  Later, Raysor told Randall that he agreed to do the job in exchange for Thorton paying him ten thousand dollars.  (Tr-2 27-28.)

The following day, on October 18, 2008, Raysor accompanied Randall to work at Shady Al's, where Raysor met with Thorton again.  (Tr-2 29-30.)  Randall testified that after they returned home after work, Raysor told her that Thorton wanted him to "take out" someone the next day, and Raysor told her that he was going to get Donnell Festus to do the job.  (Tr-2 31-32.)  The next day, on October 19, 2008, Randall, Raysor, and Festus went to Shady Al's, and Festus and Raysor met with Thorton while Randall was working.  (Tr-2 33-34.)  Afterwards, Thorton spoke with Randall and told her that it was not going to happen that night because no one brought a gun, but that he wanted Raysor and Festus back early the next morning, and he gave Randall four hundred dollars cash.  (Tr-2 34-35.)

After her shift ended, Randall, Raysor, Festus, and Cha'kre Rich, another dancer from Shady Al's whose stage name was Cream, went to the Towne House Motel where Randall checked them in and paid for the room.  (Tr-2 36-37.)  Rich stayed at the motel for most of the evening, but left early in the morning.  (Tr-1 289; Tr-2 38-39.)  Rich also testified at trial and was able to corroborate Randall's testimony from the night at the Towne House Motel.  (Tr-1 287-93.)  Rich testified that she heard Festus and Raysor talking about getting enough money to buy a house, and Festus told her that she couldn't go with them to get this money because it was "grown-up people's" business.  (Tr-1 288-89.)  Rich stayed at the motel most of the night, but left early in the morning.  (Tr-1 287-89.)

The next morning, on Monday, October 20, 2008, Randall called Thorton from a pay phone in the motel because she did not have cell phone service, and told him to meet them at an I-HOP restaurant nearby.  (Tr-2 40-41.)  From I-HOP, Thorton drove Randall, Raysor, and Festus to a McDonald's in his white BMW.  (Tr-2 41.)  At McDonald's, Thorton went into his trunk and retrieved a revolver and gave it to Raysor, who handed it to Festus.  (Tr-2 41-43.)  Thorton told them the revolver was loaded and that it wouldn't make any noise when they shot it.  (Tr-2 42-43.)

After dropping Randall of at the Courtesy Inn Motel on Jericho Turnpike near Shady Al's, Thorton, Raysor, and Festus drove around looking for a place to meet DiMartino to kill him.  (Tr-2 43-45.)  Randall checked into the motel and Raysor and Festus joined her shortly thereafter, informing her that they had found a place nearby to meet the victim.  (Tr-2 45-46.)  Raysor and Festus switched their clothes with one another, then walked from the motel to the Sil la Joung restaurant, the chosen location.  (Tr-2 46.)  At trial, a witness testified that she was driving on Jericho Turnpike and saw two black men in the parking lot of the Sil la Joung restaurant at or around 12:15 p.m. on October 20, 2008.  (Tr-1 135-37.)  Approximately twenty minutes after Festus and Raysor left the motel room, Raysor returned to the room alone and told Randall that the target was there and had arrived in a white Lexus SUV with a New York Yankees symbol on the back, which matched the vehicle description given by Thorton.  (Tr-2 47.)

Approximately ten minutes after Raysor returned to the motel room, Randall testified that Thorton began calling her, because DiMartino kept calling him, so Randall left the room to see what was taking Festus so long.  (Tr-2 47.)  Randall walked from the motel to Sil la Joung restaurant, which she stated was located across the street from Shady Al's.  (Tr- 47.)  Randall

4

saw only two people in the parking lot of the restaurant—DiMartino was standing at the end of the driveway to the restaurant and Festus was standing in front of the building.  (Tr-2 47.) Randall made eye contact with Festus and gestured at him to "do it," then left and started walking back towards the motel.  (Tr-2 48-50.)  As she was returning to the room, Randall heard a gunshot.  (Tr-2 50-51.)  When she got back to the motel room, Randall told Raysor it was done. (Tr-2 51.)  Festus returned to the room moments later and said "I gave that motherfucker a permanent headache."  (Tr-2 51.)  Festus had DiMartino's wallet and cell phone when he returned to the room.  (Tr-2 52-53.)

Randall testified that after shooting DiMartino, Festus and Raysor took a cab to the Walt Whitman Mall in Huntington.  (Tr-2 51-52.)  Before they left, Raysor told Randall that he put the gun in the toilet and to take it with her when she left.  (Tr-2 51.)  Randall later met up with Thorton at a local Hooters restaurant, and he gave her two hundred dollars, and told her that he gave Festus and Raysor a bonus.  (Tr-2 52-55.)  After meeting with Thorton, Randall took a cab to the mall to meet Festus and Raysor, and they all returned to Queens together.  (Tr-2 55-57.) Later that week, Thorton came to Shady Al's while Randall was working and gave her the rest of the money that he had promised, in the amount of eight thousand dollars.  (Tr-2 59.)  Randall gave the money to Raysor, and he gave her back eight hundred dollars, and bought her new sneakers and a coat.  (Tr-2 59.)

Meanwhile, at or around 3:00 p.m. on October 20, 2008, another witness testified at trial that she was driving by the Sil la Joung restaurant and saw a body lying on the ground in the parking lot so she called 911. (Tr-1 58-60.)  Police Officer Keith Kramer ("Officer Kramer") was the first to respond to the scene and observed a man lying on the ground in the Sil la Joung parking lot next to a white SUV.  (Tr-1 64, 68.)  Officer Kramer observed that the man had a

head wound and called an ambulance.  (Tr-1 69-70.)  While waiting for the ambulance to arrive, Officer Kramer attempted to resuscitate the man without success.  (Tr-1 70.)  After the ambulance arrived, the man, who Officer Kramer later identified as DiMartino, was transported to St. Catherine's Hospital in Smithtown because he was still alive.  (Tr-1 72.)  DiMartino was pronounced dead at 6:00 p.m. on October 20, 2008.  (Tr-2 236.)

A medical examiner employed by the Suffolk County Medical Examiner's Office conducted an autopsy on DiMartino.  (Tr-2 182.)  The medical examiner testified that DiMartino was shot once in the head, which was ultimately the cause of death.  (Tr-2 182, 186.)  The distance between DiMartino and the shooter was approximately thirty-six inches.  (Tr-2 186.)  The medical examiner was able to retrieve the bullet from DiMartino's body, and the bullet was either a .38 or .357 caliber bullet, both of which are designed to be fired from a revolver.  (Tr-1 338-48.)

Detective Ralph Rivera was the lead investigator assigned to DiMartino's homicide investigation.  (Tr-2 236.)  Detective Rivera learned that Thorton was DiMartino's business partner and began investigating both their cell phone records.  (Tr-2 238-39.)  Through the phone records, Detective Rivera found that DiMartino and Thorton exchanged numerous calls on the morning of DiMartino's murder.  (Tr-2 239.)  The phone records also revealed that Thorton received a phone call from the Towne House Motor Inn at 9:19 a.m. the morning of the murder. (Tr-2 240-41.)  Upon continuing his investigation at the Towne House Motor Inn, Detective Rivera recovered surveillance video that captured a woman using the lobby phone at the time the call was made to Thorton's cell phone.  (Tr-2 242.)  That same woman was shown on additional footage checking into the motel with her friends, and through registration cards Detective Rivera was able to identify the woman as Randall.  (Tr-1 158-62; Tr-2 241-45.)

6

After interviewing various local cab companies in the area of Sil La Joung, Detective Rivera's investigation led him to Shady Al's, an I-HOP restaurant, and the Courtesy Motor Inn, which were each in close proximity to the scene of DiMartino's murder.  (Tr-1 81-88; Tr-2 20-22, 245.)  Additional video surveillance from I-HOP showed Randall and her two friends from the Towne House Motor Inn, and Thorton's white BMW.  (Tr-2 245-46.)  Video surveillance from the Courtesy Motor Inn depicted Randall and the same additional individuals at the motel from approximately 11:50 a.m. to 2:00 p.m. on October 20, 2008, the day of DiMartino's murder, as well as Thorton's BMW.  Additionally, Thorton's phone records revealed two (718) phone numbers, both of which were registered to Donna Raysor, Raysor's mother.

Detective Rivera's investigation led him to arrest Randall, Thorton, and Raysor.  (Tr-2 257.)  Additionally, police collected evidence from the scene of the crime where DiMartino's body was found in the parking lot of Sil la Joung.  (Tr-1 361-64.)  There were two cars parking in the parking lot, DiMartino's white Lexus SUV, and the restaurant owner's Mercury Sable.  (Tr-1 361-64.)  A palm print was recovered from the Sable that later matched Festus's hand print.  (Tr-2 219-20.)  After interviewing Randall,[2] Thorton, and Raysor, and in addition to Festus's palm print from the scene of the murder, Detective Rivera had enough evidence against Festus to make an arrest on November 17, 2008.  (Tr-2 259.)

Approximately four-and-a-half hours after his arrest, Festus was questioned by police and made both oral and written statements to law enforcement.  (Tr-2 307.)  During his statements, Festus admitted to being involved in various stages of the planning process, including going to Shady Al's, going to the Towne motel with his co-conspirators and Rich, speaking with Thorton,

---

[2] Randall testified at trial that when she was initially interviewed by police, she lied about the circumstances of the murder and her involvement, including giving the police fake names and telling them that this was a robbery before ultimately confessing that she had participated in the plan to commit murder, and revealed Thorton, Raysor, and Festus's involvement.  (Tr-2 60-61.)  Randall testified pursuant to a cooperation agreement, and after she had accepted a guilty plea to Murder in the Second Degree.  (Tr-2 61-62.)

meeting Thorton at I-HOP, driving to McDonald's then picking a location with Raysor and Thorton.  (Tr-2 272-273.)  However, Festus stated that they were planning a robbery, not a murder, and he was meant to be the lookout but ended up being the shooter and shot DiMartino. (Tr-2 273-74.)  Festus told police that he sold the gun he used, and drew a picture of a revolver. (Tr-2 276, 321.)  After his arrest was processed, Festus was transferred to the precinct to be lodged and asked to write a letter of apology to DiMartino's family that he insisted on writing himself.  (Tr-2 333-34.)  Prior to trial, a hearing was conducted to determine whether Festus's statements to police and two identification procedures[3] would be admissible at trial.   The prosecution presented three witnesses: Detective Robert Chase, Detective Ralph Rivera, and Detective Jeffrey Botarri.  Although the pre-trial hearing did not require the prosecution to demonstrate the existence of probable cause, Detective Chase testified first regarding the steps taken in the investigation into DiMartino's death, thereby establishing probable cause to arrest Festus.  (Hr'g Tr. 18-34.)  Festus did not testify at the hearing and did not call any witnesses.

Detective Rivera testified regarding the circumstances of his interview with Festus, and the statements Festus made during that interview.  (Hr'g Tr. 89-116, 123-135.)  Detective Rivera testified that prior to interviewing Festus, he read Festus his <u>Miranda</u> rights and Festus stated that he understood his rights and was willing to speak with the detectives and gave an oral statement. (Hr'g Tr. 92-100.)  Afterwards, Detective Rivera asked Festus whether he would be willing to make a written statement, and read Festus his <u>Miranda</u> rights a second time, this time from a form.  (Hr'g Tr. 100-102.)  After each right, Festus wrote his initials, and at the bottom of the

---

[3] Festus was positively identified by two witnesses, Monique Randall and Jennilynne Hamm, each in a photo array identification procedure.  (Hr'g Tr. 136-138, 213-218.)  Detective Rivera created both photo arrays, and showed the photo array to Monique Randall, who identified Festus as "the man that did the shooting."  (Hr'g Tr. 136-139.) Detective Jeffrey Botarri showed the photo array to Jennilynne Hamm, who identified Festus as the person she saw at Sil la Joung on October 20, 2008.  (Hr'g Tr. 217.)  While Jennilynne Hamm testified at trial, she was not able to identify Festus in court.  (Tr-1 142.)

form Festus wrote that he was willing to speak and signed his name, then gave a written statement. (Hr'g Tr. 102-03.)  Additionally, Detective Rivera testified during cross examination that Festus never asked for an attorney. (Hr'g Tr. 163.)

During the portion of the hearing regarding Festus's statements, defense counsel raised an objection that notice of certain statements was not properly served according to Criminal Procedure Law § 710.30(1)(a). (Hr'g Tr. 116-123.)  Detective Rivera testified that during his interview with Festus, Festus viewed a photo array, and positively identified Ronald Thorton as the individual who planned the robbery. (Hr'g Tr. 114.)  He also testified that Festus wrote on the photo array "I know as Rocky who set up the robbery." (Hr'g Tr. 114.)  Defense counsel argued that, despite receiving notice that Festus made an oral statement regarding his identification of Thorton, he did not receive the photo array with Festus's written statement, and thus the written statements on the photo array should be precluded. (Hr'g Tr. 116-123.)

The hearing court found that Festus's statements were made in accordance with his constitutional rights, namely that he had waived his Miranda rights and his statements were voluntarily made. (H'rg Tr. 239-241.)  Additionally, the hearing court denied defense counsel's motion for preclusion.  The prosecution noticed statements, including an oral statement by Festus that he viewed a photo array including six photographs, and selected the photograph of Ronald Thorton, who he knew as Rocky, as well as a written statement that read "I have been shown a photo array consisting of six males, all similar in appearance.  Upon viewing the photo array, I immediately identified photo number 4 as being that of Rocky." (Hr'g Tr. 234-35.)  The statements actually contained in the C.P.L. § 710.30(1)(a) notice were similar to those contained on the photo array such that it constituted sufficient notice under the law. (Hr'g Tr. 235.)  The

hearing court also found that the two photo array identification procedures were constitutionally permissible, and were not unduly suggestive.  (Hr'g Tr. 240.)

On July 1, 2010, Festus was found guilty of Murder in the First Degree, Penal Law § 125.27, Murder in the Second Degree, Penal Law § 125.25, and Conspiracy in the Second Degree, Penal Law § 105.15.  On June 13, 2014, the trial court sentenced Festus to life imprisonment without the possibility of parol for Murder in the First Degree, twenty-five years to life for Murder in the Second Degree, and eight-and-one-third to twenty-five years for Conspiracy in the Second Degree, with all terms to run concurrently.  (S. 43-44.)

**B. Post-Conviction Proceedings**

**1. The Direct Appeal**

On March 7, 2014, Festus appealed his conviction to the Second Department of the New York State Appellate Division.  On appeal, Festus argued: (1) that the trial court erred when it failed to suppress his statement; (2) the prosecutor committed misconduct by making inappropriate summation comments; (3) the evidence presented at trial was legally and factually insufficient to support the jury's verdict; (4) the trial court erred in its Sandoval ruling; and (5) the sentences imposed were harsh and excessive.  (See Def.'s App. Br., March 7, 2014 ("App. Div. Br."), at pp. 13-40, ECF No. 10-2.)  Later, on October 15, 2014, Festus filed a pro se supplemental brief, in which he argued that: (1) he was denied his Fifth Amendment right to remain silent; (2) police intentionally and unnecessarily delayed his arraignment for the sole purpose of obtaining a confession in the absence of counsel; and (3) he was denied effective assistance of counsel when trial counsel failed to object to the prosecution's summation, failed to move to dismiss the charges based on lack of corroboration of an accomplice's testimony, and

failed to object to violations of his Sixth Amendment right to confrontation.  (See Def.'s Pro Se Supp. App. Br., October 15, 2014 ("Supp. App. Div. Br."), at pp. 11-49, ECF No. 10-2.)

The Second Department affirmed Festus's conviction.  People v. Festus, 133 A.D.3d 876 (N.Y. App. Div. 2d Dep't 2015).  With regard to the statement claim, the Appellate Division found that the contention that Festus's due process rights were violated by the failure to videotape his interrogation by police was unpreserved for appellate review, and, in any event, lacked merit. Festus, 133 A.D.3d at 877.  Further, the court found that "the hearing court properly denied that branch of defendant's omnibus motion which was to suppress his statements to the police[.]"  Id.  With respect to the legal insufficiency claim, the court found that this claim was unpreserved for appellate review, but in any event, the court found that the evidence was "legally sufficient to establish defendant's guilt beyond a reasonable doubt."  Id.  The court further found that Festus was not denied a fair trial by the prosecution's summation.  Id.  With respect to the remaining claims, the court found that the Sandoval claim lacked merit, and that Festus's sentence was not excessive.  Id., at 877-78.  With respect to the claims raised by Festus in his pro se supplemental brief, the Second Department found that the claims concerning the alleged violation of his Fifth Amendment right to remain silent and the intentional delay in his arraignment were both unpreserved for appellate review and without merit.  Id. at 878.  Further, the court found that Festus failed to establish he was denied effective assistance of counsel.  Id.

On April 6, 2016, the New York State Court of Appeals denied Festus's request for leave to appeal.  People v. Festus, 27 N.Y.3d 996 (N.Y. 2016).  Thereafter, Fetus moved for reconsideration, and on June 27, 2016 the Court of Appeals denied that request.  People v. Festus, 27 N.Y. 3d 1131 (N.Y. 2016).

## 2.  Motions to Vacate Judgment

Festus filed three motions before the trial court to vacate his judgment of conviction and set aside the verdict, pursuant to New York Criminal Procedure Law § 440.10, and all three motions were denied.  On July 27, 2013 Festus filed his first pro se motion, and argued that: (1) his Sixth Amendment right to confront witnesses was violated when the trial court allowed a latent partial palm print into evidence without testimony from the officer who lifted the latent print or a fingerprint identification expert; (2) defense counsel was ineffective for failing to object to the latent print being admitted into evidence.  (See Mot. to Vacate J., July 27, 2013, at pp. 3-4, ECF No. 10-1.)  The trial court denied the motion in its entirety.  (Dec. and Order, Dec. 31, 2013, at p. 2, ECF No. 10-1.)   In rejecting Festus's Sixth Amendment claim, the court reasoned that this claim was reviewable on direct appeal, and that Festus failed to provide any justification for raising the claim in his § 440.10 motion.   (Dec. and Order, Dec. 31, 2013, at p. 2, ECF No. 10-1.)   The trial court denied Festus's   ineffective assistance of counsel claim, finding that  Festus had not proffered sufficient factual allegations to support his claim and instead relied solely on conclusory statements.  (Dec. and Order, Dec. 31, 2013 at pp. 3-4.)

On April 28, 2014, Festus filed his second pro se motion to vacate the judgment pursuant to CPL § 440.10(viii) in the trial court, and argued that he was denied effective assistance of counsel based on the following alleged failures by counsel: (1) failure to argue that his Miranda rights were violated during police interrogation; (2) failure to call certain witnesses; (3) failure to cross-examine witness Jennilynne Hamm regarding the photo array identification procedure; (4) failure to argue that the Suffolk County police lacked geographical jurisdiction over him; (5) failure to make a motion for change of venue; failure to present a third-party culpability defense; and (6) failure to show him video surveillance evidence.  (See Second Mot. to Vacate J., April

28, 2014, at ECF pp. 5-9, ECF No. 10-4.)  Festus also argued that his Sixth Amendment right to confront the witnesses against him was violated when the trial court allowed Monique Randall to testify to out-of-court statements made by Thorton and Raysor, and that the claim was not preserved for appellate review as the result of ineffective assistance of counsel, and, according to Festus, this failure to object to the admission of these out-of-court statements was the result of ineffective assistance of counsel.  (Second Mot. to Vacate J., at ECF pp. 15-18.)

The Supreme Court, Nassau County, denied Festus's motion in its entirety.  (See Dec. and Order, January 15, 2014, at p. 2, ECF No. 10-4.)  The court held that many of the claims Festus raised were based on matters in the trial record, and thus could have been raised on direct appeal.  Id.  Additionally, the court found "[w]ith respect to those issues and arguments that are based upon matters outside the record, defendant has not presented any sworn factual allegations outlining or establishing how counsel was ineffective."  Id. (internal citations omitted.)  The court further noted that Festus made a previous motion to vacate his judgment of conviction, and to the extent that he raised identical claims, he once again failed to offer any sworn allegations to support his claims, and to the extent he raised new claims, Festus failed to articulate any reason why he did not raise the new claims in his prior application.  Id. (internal citations omitted.)

Festus filed his third pro se motion to vacate his judgement of conviction, pursuant to CPL § 440.10(ii), (iii), and (viii), on April 6, 2015.  In his application Festus argued the following: (1) that the prosecution knowingly introduced false material evidence, namely testimony from witnesses Monique Randall and Cha'kre Rich; (2) that police, as agents of the prosecution, used fraud to obtain conviction by coercing his statement; and (3) that the prosecution committed misconduct.  (See Third Mot. to Vacate J., April 6, 2015, at ECF pp. 14-33, ECF No. 10-5.)

The Supreme Court, Nassau County, denied Festus's motion in its entirety.  (See Dec. and Order, October 7, 2015, at ECF pp. 57-58, ECF No. 10-6.)  To the extent Festus's motion was based on allegations of insufficient evidence, the court stated that, pursuant to C.P.L. § 440.10(2)(b), the court must deny that a motion that is appealable or pending appeal, and there are sufficient facts within the record to provide adequate review of the issue.  Accordingly, as Festus's insufficient evidence claim was record-based, and, as such, was reviewable on direct appeal, the trial court denied his motion.  Id.  With respect to Festus's claim that the prosecution knowingly introduced false testimony at trial, the court found that any discrepancies in the testimony of Monique Randall and Cha'kre Rich were fully explored at trial by defense counsel, and that the alleged discrepancies do not give rise to his claim that false testimony was knowingly introduced by the prosecution.  Id.  As such, Festus's motion was denied.

Thereafter, Petitioner filed a pro se motion for leave to appeal the trial court's 440 decision to the Second Department, pursuant to CPL 450.15 and 460.15.  (See Mot. for Leave to Appeal, at ECF pp. 43-52, ECF No. 10-6).  Festus argued that the trial court failed to address two of his claims: (1) that the police used fraud to coerce his statement; and (2) that the prosecution committed misconduct thereby denying his right to a fair trial.  (See Mot. for Leave to Appeal at ECF 49-50.)   The Appellate Division denied Petitioner's application.  (See App. Div. Order, D.E. 10-6, at ECF p. 56.)

This Petition followed.

### 3.  The Instant Petition

Festus filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 28, 2017, asserting eight grounds for relief: (1) that his Fifth Amendment right to remain silent was violated and the trial court erred by failing to suppress his statements; (2) that his

Sixth Amendment right to confront witnesses was violated; (3) that the police delayed his arraignment for the sole purpose of obtaining a confession in the absence of counsel; (4) that the prosecution committed prosecutorial misconduct by knowingly introducing false testimony; (5) that he was denied effective assistance of counsel; (6) that the trial court erred by failing to suppress his statements to law enforcement; (7) the prosecution committed prosecutorial misconduct by making inappropriate comments during summation; and (8) that the trial evidence was legally and factually insufficient to support the verdict.  (See Pet. at ECF pp. 5-19, ECF No. 1.)[4]  For the reasons discussed below, all of Festus's claims are either procedurally barred or without merit.  Thus, the instant petition is DENIED in its entirety.

## II. DISCUSSION

### A. Standards of Review

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring).  Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  See id. § 2254.

---

[4] The Court uses the pagination assigned by the electronic case filing system for ECF No. 1.

### 2. Exhaustion

A court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  This requirement first allows state courts the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Thus, a petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered.  Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).  Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'"  Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

### 3. Procedural Default

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).  This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds.  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its

16

decision) (emphasis in original).  When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  To demonstrate cause, a petitioner must put forth that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials … made compliance impracticable."  Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted).  A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation.  See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage…" United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result.  For example, a petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted."  Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  To prevail, the petitioner must

put forth "new reliable evidence … that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup, 513 U.S. at 324.

Finally, it must be noted that "[t]he concepts of procedural bar and exhaustion often interact in an important way." Dominguez v. Rock, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y. Feb. 9, 2016). "If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so – for example, if the time to file a state-court appeal has passed – then that claim is considered procedurally barred rather than unexhausted."  Id. (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks and citation omitted).

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'"  Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet,'" and for good reason. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "'unless objectively unreasonable in

light of the evidence presented in the state court proceeding.'"   Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).   Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."   Williams, 529 U.S. at 389.

### 5. Pro Se Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."   Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Gomez's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'"   Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).   This liberal interpretation of the petition "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'"   Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

## B. Claims for Relief

As stated above, Festus seek habeas relief on eight separate grounds: (1) that his Fifth Amendment right to remain silent was violated and the trial court erred by failing to suppress his statements; (2) that his Sixth Amendment right to confront witnesses was violated; (3) that the police delayed his arraignment for the sole purpose of obtaining a confession in the absence of counsel; (4) that the prosecution committed prosecutorial misconduct by knowingly introducing false testimony; (5) that he was denied effective assistance of counsel; (6) that the trial court erred by failing to suppress his statements to law enforcement; (7) the prosecution committed prosecutorial misconduct by making certain comments during summation; and (8) that the trial

evidence was legally and factually insufficient to support the verdict.  (See Pet. at ECF pp. 5-19.)
For the following reasons, the petition is DENIED in its entirety.

### 1. Statement Claims

Festus seeks habeas relief on the grounds that his statements to law enforcement violated
his rights for the following reasons: (1) his Fifth Amendment right to remain silent was violated;
(2) that his arraignment was wrongfully delayed to obtain a confession in the absence of counsel;
and (3) the trial court erred by not suppressing his statements.  For the following reasons, these
claims are denied.

### a. Fifth Amendment Claim

Festus alleges that during his interrogation he refused to answer certain questions and
refused to speak for several minutes, and by doing so he invoked his Fifth Amendment right to
remain silent.  (Pet. at ECF 5.)  Festus further argues that instead of honoring his right to remain
silent, the detectives continued the interrogation even though Festus did not initiate the
conversation.  (Pet. at ECF 5.)  This claim was raised on direct appeal and was rejected by the
Appellate Division, stating Festus's claim was "unpreserved for appellate review, and, in any
event, without merit."  Festus, 133 AD3d at 878.  As such, the state court "expressly relied on a
procedural default as an independent and adequate state ground" in denying Festus's unpreserved
claim, but found in the alternative that it lacked merit.  Velasquez, 898 F.2d at 9.

To overcome the procedural bar, Festus must demonstrate: (1) "cause for the default and
actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider
the claims will result in a fundamental miscarriage of justice."  Coleman, 750.  Festus has not
shown cause for the default and actual prejudice, or that failure to consider his Fifth Amendment
claim will result in a fundamental miscarriage of justice.  Thus, Festus cannot overcome this

procedural bar.  Even so, and in an abundance of caution, this Court addresses Festus's claim on the merits.

"Statements obtained in violation of Miranda are of course subject to a prophylactic rule of exclusion."  United States v. Gonzalez, 764 F.3d 159, 165 (2d Cir. 2014).  And "[o]nce Miranda rights have been invoked, interrogation must stop and the invocation must be 'scrupulously honored.'"  Gonzalez, 764 F.3d at 165.  Therefore, the first question is whether Festus actually invoked his Fifth Amendment right to remain silent by refusing to answer certain questions.  The Court concludes that he did not.

The Supreme Court has held that the right to remain silent must be unambiguously invoked.  Berghuis v. Thompkins, 560 U.S. 370, 381-82 (2010).  In Berghuis, the defendant was silent for approximately two hours and forty-five minutes during his interrogation with detectives, but did not state that he wanted to remain silent or that he did not want to speak with police.  Id., 560 U.S. at 379, 382.  The Berghuis Court held that "[h]ad he made either of these simply, unambiguous statements, he would have invoked his 'right to cut off questioning.'" Berghuis, at 382 (quoting Michigan v. Mosley, 423 U.S. 96, 103 (1975)).  Thus, the Court found that the defendant did not invoke his right to remain silent.

Here, Festus was interviewed by police and gave both oral and written statements after his arrest.  (H'rg Tr. 27, 31-32, 68, 88.)  Detective Rivera and Detective Gerard McAlvin questioned Festus first, and prior to their interview Festus waived his Miranda rights and memorialized his waiver on a Miranda card they provided to him.  (H'rg Tr. 91-94.)  The suppression hearing record shows that during the interrogation, Detective Rivera asked Festus a series of questions regarding the strip club Shady Al's.  (H'rg Tr. 164.)  Festus did not provide answers to these questions.  Festus, however, did not say that he wished to remain silent, and in

fact he later spoke about going to Shady Al's.  (H'rg Tr. 164-66.)  And, after providing this oral statement, Festus also agreed to give a written statement, and he once again waived his Miranda rights at the top of the form used to make his written statement.  (H'rg Tr. 101-02.)

Based on the evidence in the hearing record, Festus did not unambiguously invoke his right to remain silent.  At no time did he explicitly state he wished to remain silent, nor did he say he was invoking his Fifth Amendment rights.  Further, in his petition, Festus argues that simply by remaining silent and refusing to answer certain questions, his silence was tantamount to invoking his right—however, pursuant to Supreme Court law, his silence was not enough.

Accordingly, Festus's Fifth Amendment claim is denied.[5]

### b.  Delayed Arraignment Claim

Festus seeks habeas relief on the grounds that the police delayed his arraignment to obtain a confession from him in the absence of counsel.  (Pet. at ECF 8.)  For the following reasons, this claim is denied.

On direct appeal, Festus raised this argument in his pro se supplemental brief.  See Supp. App. Div. Br. at 21-29.  However, the Appellate Division ruled that Festus had not preserved his claim for appellate review and also found, in any event, that the claim was without merit.  Festus, 133 A.D.3d at 878.  Thus, Festus's claim is procedurally barred from habeas review as the Appellate Division rejected this challenge on independent and adequate state grounds.  Again, Festus has failed to demonstrate cause, prejudice, or that a fundamental miscarriage of justice

---

[5] Festus also raises this argument as part of his ineffective assistance of counsel claim.  Festus argues that because Detective Rivera testified that Festus initially remained silent in response to a line of questioning that defense counsel should have argued during the pretrial hearing that his silence invoked his right to remain silent.  (Pet. at ECF 16.)  At the conclusion of the pretrial hearing both defense counsel and the prosecutor relied on the record instead of making a closing argument.  (Hr'g Tr. 238-39.)  However, as established herein, silence does not equal invocation of his Fifth Amendment right to silence.  As such, Festus cannot demonstrate that counsel's performance was deficient for failure to raise a baseless argument, and, thus, his ineffective assistance of counsel claim is also denied.

would result if he is barred from habeas review on this claim; thus, he cannot overcome this procedural bar.  See Coleman, 501 U.S. at 750.  Regardless, the Court addresses his claim on the merits.

"To the extent that federal habeas courts have even considered the constitutionality of delaying arraignment of state defendants, they have only done so as part of a Fifth Amendment based analysis of the voluntariness of confessions.  Thus, delay in arraigning a state defendant is not, in itself, a constitutional violation, but is at most a factor to be weighed in determining whether or not, viewed in the totality of the circumstances, an incriminating statement was the product of police coercion."  Holmes v. Scully, 706 F. Supp. 195, 202 (E.D.N.Y. 1989); see also Johnson v. Coleman, No. 15-CV-5466, 2018 WL 6250510, at *8 (E.D.N.Y. Nov. 29, 2018). Furthermore, "a reasonable delay in arraignment alone is not a basis for granting the writ." Beniquez v. Bennett, No. 00-CV-0985, 2003 WL 21508329, at *3 (E.D.N.Y. June 16, 2003). Thus, the Court will only address whether any delay in Festus's arraignment rendered his Miranda waiver involuntary.

In assessing the voluntariness of a confession, the court must consider "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." Dickerson v. United States, 530 U.S. 428, 434 (2000). On federal habeas review, the state hearing court's findings of fact regarding the circumstances surrounding a petitioner's statements to law enforcement are presumptively correct. Reyes v. Greiner, 340 F. Supp.2d 245, 256-57 (E.D.N.Y. 2004), aff'd, 150 Fed. App'x 77 (2d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

24

Festus was arrested at approximately 1:00 p.m. on November 17, 2008.  (Tr-2 259.) During that time period, and after four and a half hours had elapsed, Festus made both an oral and written statement, and later wrote a self-motivated apology letter to DiMartino's family once he arrived at the precinct for lodging at approximately 1:00 a.m. the next day, November 18, 2008.  As such, all of Festus's statements to law enforcement were made within twelve hours of his arrest.  Additionally, before making both his oral and written statements, Festus waived his Miranda rights, and memorialized his waivers in writing.  (H'rg Tr. 91-94, 101-02.)  Prior to trial, a Huntley hearing was conducted to determine whether the statements Festus made to law enforcement were voluntary and conformed with his constitutional rights.  At the conclusion of the hearing, the hearing court found that Festus made a knowing and voluntary waiver of his Miranda rights, and that all his statements to law enforcement were voluntarily made.  (H'rg Tr. 239.)

As such, the Court denies Festus's habeas claim that his arraignment was wrongfully delayed.

### c. Suppression Claim

Festus's claim that the trial court erred by not suppressing his statements rests on the following arguments: (1) his custodial interrogation had to be electronically recorded; (2) he did not waive his Miranda rights; (3) his statements were not made voluntarily; (4) he invoked his right to an attorney; (5) he invoked his right to remain silent[6]; and (6) that the state law notice requirement was not met.  (Pet. at ECF 16-17.)

On direct appeal, Festus raised his claim that his statements to law enforcement should have been suppressed on the above-mentioned grounds, and each argument was rejected by the

---

[6] The Court has previously denied Festus's claim that he invoked his Fifth Amendment right to remain silent supra at pp. 17-20, and, as such, the claim is not addressed here.

Appellate Division.  Festus, 133 A.D.3d at 876.  The Second Department held that Festus's claim that the police failed to record his interrogation was unpreserved for appellate review, and, in any event, was without merit.  Id.  The appellate court further held that Festus waived his Miranda rights, never invoked his right to counsel, and made his statements voluntarily, and further found that there was "no basis in the record to disturb the hearing court's determination crediting testimony."  Id.  Last, the appellate court ruled that the notice requirement was sufficiently met. Id.

Festus's claim regarding the failure by police to electronically record his interrogation was rejected on independent and adequate state grounds, and is thus procedurally barred from habeas review.  Here, Festus has failed to demonstrate cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review, and, as such, he cannot overcome this procedural bar.  See Coleman, 501 U.S. at 750.  However, the Court addresses this claim on the merits.

In his petition, Festus argues that due process requires that police officers must electronically record an accused's statements made during a custodial interrogation.  (Pet. at ECF 16.)  However, the Constitution does not require police officers to record interrogations or confessions.  Linnen v. Poole, 766 F.Supp.2d 427, 454 (W.D.N.Y. 2011); see e.g. United States v. Meadows, 571 F.3d 131, 147 (1st Cir. 2009) (finding "there is no federal constitutional right to have one's custodial interrogation recorded"); (Ridgley v. Pugh, 176 F.3d 484 (9th Cir. 1999) (habeas claim based on police officer's failure to tape-record a portion of petitioner's interrogation "does not state a violation of a federal constitutional or statutory right"); United States v. Yunis, 859 F.2d 953, 961 (D.C. Cir.1988) (finding "no constitutional requirement to record confessions by any particular means," including videotaping, even if such equipment is

available).   Because Festus cannot demonstrate that he has any federal constitutional right to having his interrogation electronically recorded, this branch of his petition is denied.

Festus further alleges that he did not waive his rights under Miranda, his statements were involuntary, and his requests for an attorney were ignored.   Each of Festus's claims here were previously litigated as his pre-trial hearing, and the hearing court found that Festus's statements were voluntary and conformed with <u>Miranda</u>.   (Hr'g Tr. 239-241.)   As established <u>supra</u>, the record supports that Festus waived his <u>Miranda</u> rights twice, once prior to his oral statements and again before his written statements, with both waivers memorialized in writing.   (H'rg Tr. 91-94, 101-02.)   Further, and as discussed herein, there is no evidence in the record that supports that Festus's claim that he was physically or mentally assaulted by the police during his interrogation, rendering his statements involuntary.   Additionally, the record does not support that he invoked his right to counsel.   As such, Festus's <u>Miranda</u> branch of his suppression claim is denied. Festus has not established that the state court's rejection of these claims was contrary to or an unreasonable application of federal law or an unreasonable determination of the facts.

Last, Festus asserts that his statements should have been suppressed because the prosecution failed to provide notice pursuant to Criminal Procedure Law §710.30.[7]   The notice requirement obligates the prosecution to serve notice upon the defendant of the intention to offer evidence of a statement made by the defendant to a public servant at trial.   <u>See</u> C.P.L. § 710.30(1)(a).   The notice requirement presents an alleged violation of state statutory law.   It is well settled that "federal habeas corpus relief does not lie for errors of state law," absent a showing of a corresponding violation of federal constitutional rights.   <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991).   More specifically, alleged violations of C.P.L. §710.30 are not cognizable on

---

[7] The notice requirement branch of Festus's suppression claim was properly exhausted in state court, and the Respondent does not oppose that the claim was exhausted.

federal habeas review.  E.g. Brown v. Harris, 666 F.2d 782, 785 (2d Cir. 1981) ("Brown cites no case indicating that [C.P.L. §710.30], or that a notice requirement in general, is constitutionally mandated."); see also Martinez v. Miller, No. 04-CV-0090, 2009 WL 1272069, at *16 (N.D.N.Y. May 5, 2009) (adopting Report and Recommendation) ("Petitioner's claim regarding lack of the statutorily required notice is based entirely on an alleged state law violation, and he has not alleged, much less proven, that his alleged federal constitutional rights were violated by the prosecutor's failure to provide the required notice.").

Festus argues that the prosecution failed to serve him with notice of his statement on the photo array where he identified Thorton as the person who set up the robbery.  (Pet. at ECF 17.) The Appellate Division held that "[t]he People's notice of intention to introduce a photo array on which the defendant wrote that he identified someone in the array as an accomplice was sufficient under C.P.L. §710.30(1)(a) to give notice of the People's intention to use, at trial, the defendant's statement written on the array." Festus, 133 A.D.2d at 877.

Because Festus's claim does not allege a violation of his constitutional rights, but instead hinges on state statutory requirement, the Court denies habeas relief.

Accordingly, Festus's claim that the trial court erred by not suppressing his statements does not warrant habeas relief and, therefore, is denied in its entirety.

### 2.  Confrontation Clause Claim

Festus seeks habeas relief on the ground that his Sixth Amendment right to confront witnesses against him was violated after Monique Randall testified to hearsay statements made by co-defendants who did not testify.  Festus also argues that these hearsay statements were used by the prosecution to prove the conspiracy charge against him, and that without the hearsay

statements it would have been impossible to prove the conspiracy charge.  (Pet. at ECF 6.)  For the following reasons, this claim is denied.

As an initial matter, Festus has not fully exhausted this claim.  Festus raised this claim on direct appeal and in his second motion to vacate judgment, but only as part of his ineffective assistance of counsel claim.  As such, the instant claim is procedurally defaulted.  In his petition, Festus fails to show cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review.  Here, Festus also raises the instant claim as part of his ineffective assistance of counsel claim.  As explained infra, his ineffective assistance claim regarding counsel's failure to object on Sixth Amendment grounds fails, and, as such, Festus cannot show cause.  Therefore, Festus cannot overcome this procedural bar.  See Coleman, 501 U.S. at 750.  However, the Court continues to address his claim on the merits.

A defendant in a state criminal prosecution has a right, guaranteed by the Sixth and Fourteenth Amendments to the Constitution, "to be confronted with the witnesses against him." U.S. Const. Amend. VI; see Pointer v. Texas, 380 U.S. 400, 401 (1965) (holding that the Sixth Amendment Confrontation Clause is made applicable to the states by the Fourteenth Amendment). "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." United States v. Jass, 569 F.3d 47, 55 (2d Cir. 2009) (quoting Ryan v. Miller, 303 F.3d 231, 247 (2d Cir.2002)).  To determine whether the Confrontation Clause was violated by the admission of co-conspirator's statements through Randall's testimony, the inquiry "begins with the questions of whether the statements are testimonial." United States v. Sagat, 377 F.3d 223, 227 (2d Cir. 2004).  Where statements are non-testimonial, their admission into evidence at trial does not violate the Confrontation Clause

if the statements "fall within a firmly rooted hearsay exception or demonstrate particularized guarantees of trustworthiness." Sagat, 377 F.3d at 227.

The Supreme Court has stated that statements made in furtherance of a conspiracy are non-testimonial with respect to the Confrontation Clause, and, thus, are not covered by its protections. Crawford v. Washington, 541 U.S. 36, 68 (2004) (finding that most hearsay exceptions applied to "statements that were by their nature not testimonial – for example, business records or statements in furtherance of a conspiracy"). Festus avers that during Randall's testimony she testified to out-of-court statements made by other co-conspirators who did not testify, namely Thorton and Raysor, and, as such, violated the Confrontation Clause of the Sixth Amendment. The out-of-court statements made by Thorton and Raysor were very clearly made during the planning process to orchestrate DiMartino's murder. Statements made after Festus shot DiMartino were also made in furtherance of the conspiracy, because they related to the payment agreed upon by the co-conspirators in exchange for the murder. As such, all out-of-court statements made by Thorton and Raysor, and admitted during Randall's testimony, were in furtherance of the conspiracy. Therefore, these out-of-court statements are non-testimonial, and not subject to the protections of the Confrontation Clause.

Festus further argues that the co-conspirators' statements could not be used to establish the conspiracy, and as such the statements were inadmissible hearsay. As an initial matter, statements made by a co-conspirator being offered at trial against a defendant is a long recognized hearsay exception in both New York state and federal court. See People v. Salko, 47 N.Y.2d 230 (1979), Fed. R. Evid. §801(d)(2). According to New York common law, once a prima facie case of conspiracy is established, a co-conspirator's statements are admissible against a defendant, and the statements may be admitted into evidence before the prima facie

case of conspiracy is proven so long as it is proven by the close of trial.  See People v. Caban, 5 N.Y.3d 143, 151 (2005).

To admit a co-conspirator statement under the federal rule, the court must find that: (1) there was a conspiracy; (2) its members included the declarant and the party against whom the statement is offered; and (3) the statements was made during the course of and in furtherance of the conspiracy.  See United States v. Rivera, 22 F.3d 430, 435-36 (2d Cir. 1994). Additionally, the Supreme Court has ruled that a co-conspirator's out of court statements may be used to establish the existence of the underlying conspiracy.  Bourjaily v. United States, 483 U.S. 171, 179-80 (1987).

Therefore, pursuant to both state and federal law, the trial court was permitted to rely on Randall's testimony of Thorton and Raysor's statements to establish the conspiracy.  Festus further argues that it would have been impossible to establish the conspiracy without the out-of-court statements by Thorton and Raysor, and for that reason the statements should not have been admitted into evidence.  However, there was plenty of additional evidence to support the conspiracy, including Randall's testimony, video surveillance that showed the co-conspirators together, cell phone records demonstrating that the co-conspirators were in contact leading up to, and following, the crime, and defendant's own admission that there was a conspiracy.  Thus, even without Thorton and Raysor's statements, there was enough evidence to demonstrate that a conspiracy existed, and, as such, Thorton and Raysor's statements were subject to the hearsay exception and were admissible at trial through Randall's testimony.

Festus cannot establish that his Sixth Amendment rights were violated by Monique Randall's testimony.  Thus, habeas relief is not warranted based upon this claim.

### 3.  Prosecutorial Misconduct Claims

In his petition, Festus raises two arguments that assert that the prosecution committed misconduct during his trial: (1) the prosecutor knowingly introduced false testimony; and (2) the prosecutor made improper comments during summation.  (Pet. at ECF pp. 9, 17.)  As a result of these allegations, Festus contends that he was denied his right to a fair trial.  For the reasons stated below, Festus's prosecutorial misconduct claims are denied in their entirety.

### a.  False Testimony Claim

Festus claims that Randall and Cha'kre Rich each testified falsely at trial, and that the prosecution suborned their perjurious testimony.  (Pet. at ECF 9.)  Festus argues that the testimony given at trial was false because there were discrepancies between Randall and Rich's trial testimony and their testimony before the grand jury.  Festus raised a false testimony claim in his third motion to vacate his judgment of conviction.  Festus's third motion to vacate was denied by the county court, after which Festus sought leave to appeal to the Appellate Division, and leave to appeal was denied.  As such, Festus's false testimony claim is exhausted.[8] However, Festus does not demonstrate that the state court's ruling denying his motion was contrary to, or in violation of, established federal or constitutional law or was an unreasonable determination of the facts.  As such, this claim is denied.

To prevail on a claim for prosecutorial misconduct based on false testimony, a petitioner must establish: (1) that there was false testimony; (2) that the prosecution knew or should have known that the testimony was false; and (3) that there was "any reasonable likelihood that the

---

[8] Respondent argues that this claim is only partially exhausted because, according to Respondent, Festus's third motion to vacate Festus only raised his claim with respect to Randall's testimony.  See Resp. Mem. in Opp. to Pet., D.E. 11, ECF p. 24.  Festus's third motion to vacate his judgment of conviction was confusing, but appears to have raised a claim that Rich also testified falsely at trial.  (See 3rd Mot. to Vacate J., ECF pp. 18-19.)  As such, it appears that this claim was exhausted.  Regardless, as explained infra, even if Festus's claim regarding Rich's testimony was unexhausted, the Court still reach the merits of this claim.

perjured testimony could have affected the judgement of the jury."[9]   United States v. Helmsley, 985 F. 2d 1202, 1205-06 (2d Cir. 1993) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976).   Therefore, the threshold question is whether the witness in fact committed perjury. United States v. Monteleone, 257 F. 3d 210, 219 (2d Cir. 2001).

To support his claim, Festus argues that there were discrepancies between each witnesses' trial testimony and their grand jury testimonies.   (Pet. At ECF p. 9.)   Festus made the same argument to support his claim in his third § 440.10 motion to vacate his judgment of conviction.[10]   (3rd Mot. to Vacate J., ECF pp. 18-30.)   The court denied Festus's motion and found

---

[10] While Festus' petition does not identify any specific perjured testimony, he did include a list of testimony he argued was false in his third § 440.10 motion.  Specifically,  he argued that Randall and Rich testified falsely in seven areas:

(1)  Randall testified at trial that she initially gave fake names when questioned by police.  Festus insists that her initial statements to police officers were truthful and were not fake names.

(2)  Randall testified that she did not identify Ronald Thorton in a photo array.  Festus insists that evidence introduced at the pretrial hearing—namely, the photo array itself and police officer testimony—contradicted Festus's trial testimony on this point.

(3) Both Rich and Randall (during her direct examination) testified that Festus purchased bottles of champagne at Shady Al's.  However, on cross-examination Randall stated that it was, in fact, Raysor who purchased the champagne.

(4)  Randall testified to various observations in the motel.  However, in the grand jury she testified that she passed out in the motel room.

(5)  Randall testified that Raysor told her that Festus put the gun the in toilet in the motel room.  However, in the grand jury, she testified that she saw actually Festus with the gun.

(6)  Randall testified that Festus, Raysor, and Thorton were picked by Thorton in the BMW.  Festus essentially asserts that there was no evidence corroborating that testimony.

(7)  Festus also points to various examples of how, on cross-examination, defense counsel confronted Randall with her prior conflicting testimony from the Grand Jury, and often her responses were that she did not recall or remember.

(3rd Mot. to Vacate J., ECF pp. 18-30.)

> Defendant has failed to substantiate his claim that the People
> knowingly offered false testimony during his trial.  The fact that
> there may have been discrepancies between the witness's trial
> testimony and her pretrial statements to members of the Suffolk
> County Police and the Grand Jury, was fully explored during the
> course of the trial by defense counsel.  Such discrepancies do not
> give rise to a claim that false testimony was knowingly introduced
> at trial.  Further, defendant failed to offer any evidence to establish
> that the prosecutor knew, or should have known, that any evidence
> introduced at trial was false.

(See Dec. and Order, October 7, 2015, at ECF 57-58) (internal citations omitted).

As the state court concluded, the purported perjury was explored during trial before the jury, which considered these discrepancies and still convicted Festus.[11]   Cf, United States v. Milikowsky, 896 F. Supp. 1285, 1307 (D. Conn. 1994), aff'd, 65 F.3d 4 (2d Cir. 1995) ("[A] court need not conduct a mini-trial on each occasion a government witness contradicts previous statements; nor will the government be assumed to be suborning perjury with each such inconsistency on the part of their witnesses.  Such a procedure would usurp from the jury its proper role as the finder of fact, and the arbiter of credibility.").  Furthermore, there was also no evidence that the prosecution knew that any of the trial testimony at issue false.  As such, Festus cannot demonstrate that the state court's decision denying his claim based on false testimony was contrary to, or in violation of, established federal law or was an unreasonable determination of

---

[11] One aspect of Randall's allegedly false testimony was potentially not explored before the jury.  Randall testified that she did not identify Ronald Thorton in a photo array.  Festus maintains that evidence introduced at the pretrial hearing—namely, the photo array itself and police officer testimony—contradicted Festus's trial testimony on this point.  Randall's perjury claim on this point is absurd.  Randall's testimony at trial—that she could not identify Thorton in a photo array—was more favorable to Festus than the evidence about the photo array introduced at the pretrial hearing, which indicated that Randall did not identify Thornton.  In any event, the contradiction between Randall's testimony and the other evidence on this issue is insufficient to establish perjury.

the facts.[12] facts.  See United States v. Bortnovsky, 879 F.2d 30, 33 (2d Cir. 1989) ("Presentation

of a witness who recants or contradicts his prior testimony is not to be confused with . . . perjury.

It was for the jury to decide whether or not to credit the witness."  (quoting United States v.

Holladay, 566 F.2d 1018, 1019 (5th Cir. 1978) (per curiam)); see also Monteleone, 257 F.3d at

219 ("A witness commits perjury if he gives false testimony concerning a material matter with

the willful intent to provide false testimony, as distinguished from incorrect testimony resulting

from confusion, mistake, or faulty memory."); United States v. Frank, 749 F. Appx 5, 9 (2d Cir.

2018) (summary order) (rejecting perjury claim where the defendant failed to demonstrate that

the alleged perjury "remained undisclosed during trial" as "[t]he inconsistency in Owens'

testimony was fully explored before the jury.  Defense counsel questioned Owens about the

inconsistency; and, when Owens doubled-down on his assertion that he had left the car when he

received the call, defense counsel read Owens his prior inconsistent statement from the plea

colloquy.  Given this airing of the issue, there is no reasonable likelihood that the false testimony

affected the judgment of the jury.").

　　　Accordingly, Festus's prosecutorial misconduct claim with respect to false testimony is

denied habeas relief.

### b.  Improper Summation Comments Claim

　　　In his petition, Festus argues that the prosecutor committed misconduct by introducing a

financial motive behind the murder for hire plot during summation, thereby denying him a fair

---

[12]  It is somewhat unclear from the state court's decision whether the state court addressed the claim that Rich's testimony that Festus's purchase of the champagne bottles constituted perjury.  This Court concludes that the state court's decision on Festus' perjury claim also encompassed Festus's argument that both Rich and Randall testified falsely about the champagne purchase.  Moreover even assuming, for the sake of argument, that Festus's claim that Rich committed perjury was not addressed by the state court, even absent AEDPA deference, this Court would still deny this claim.

trial.  Petitioner raised the same argument in his direct appeal. (See App. Div. Br., at pp. 30-31.)

The Appellate Division rejected Festus's claim and found that he was not denied a fair trial by

the prosecutor's summation.  Festus, 133 A.D.3d at 877.  The Court finds that the Appellate

Division's decision was neither contrary to nor an unreasonable application of clearly established

federal law and its decision was not based on an unreasonable determination of the facts.  Thus,

Festus's claim is denied.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's

comments standing alone' in an otherwise fair proceeding."  Gonzalez v. Sullivan, 934 F.2d 419,

424 (2d Cir. 1991) (quoting United States v. Young, 470 U.S. 1, 11 (1985)); see also United

States v. Elias, 285 F. 3d. 183, 190 (2d Cir. 2002).   To amount to constitutional error, "it is not

enough that the prosecutor's remarks were undesirable or even universally condemned."  Darden

v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted).

Rather, the prosecutor's comments "must represent 'egregious misconduct.'"   Celleri v.

Marshall, No. 07-CV-4114, 2009 WL 1269754, at *17 (E.D.N.Y. May 6, 2009) (quoting

Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)); see also United States v. Shareef, 190

F.3d 71, 78 (2d Cir. 1999) ("Remarks of the prosecutor in summation do not amount to a denial

of due process unless they constitute 'egregious misconduct.'" (internal quote omitted)).  Thus,

to warrant relief, the Court must conclude that the comments "'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"  Darden, 477 U.S. at 181

(quoting Donnelly, 416 U.S. at 643).

Additionally, the prosecution is permitted to rebut arguments raised during a defendant's

summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to

counter the defense counsel's view of the facts.'"  Readdon v. Senkowski, No. 96-CV-4722, 1998

WL 720682, at *13 (S.D.N.Y. Oct. 13, 1998) (quoting Orr v. Schaeffer, 460 F. Supp. 964, 967 (S.D.N.Y. 1978)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." Pilgrim v. Keane, 2000 WL 1772653 at *3 (E.D.N.Y. Nov. 15, 2000)

Here, the comments made by the prosecutor during summation amount do not amount to egregious misconduct. As an initial matter, it is permissible and appropriate for the prosecutor to make arguments by drawing inferences from the evidence presented at trial. Cooper v. Costello, No. 93-CV-5670, 1996 WL 1088929, at *15 (E.D.N.Y. July 23, 1996). During Detective Rivera's direct testimony, he stated that he subpoenaed and reviewed bank records and financial records from Thorton and DiMartino's business, as well as their personal bank records, and after reviewing the records, he believed that there might have been a financial motive to the murder. (Tr-2 247.) Afterwards, when the prosecutor asked Detective Rivera about the contents of the financial records that were not in evidence, the trial court sustained defense counsel's objection, and the prosecutor did not question Detective Rivera further regarding the financial records or motive. (Tr-2 248.) However, Detective Rivera's initial testimony about receiving the financial records, reviewing them, and considering them as part of his investigation, such that he thought there was a financial motive for DiMartino's murder, remained part of the record for the jury's consideration. Defense counsel never sought to strike that testimony.

During summation, the prosecutor referred to the portion of Detective Rivera's testimony regarding the financial motive for the crime, and argued the following:

> MS. CLIFFORD:     Ladies and gentlemen, this statement, (indicating) Detective Rivera told you that he believed from early on in this investigation after the murder of Jim DiMartino that this was, in fact, a murder for hire, a contract murder. And he told you

37

|               | why he believed that.  He reviewed the financial records of Ronald Thorton, the financial records of Jim DiMartino.  He interviewed witnesses, people who had been scammed by Ronald Thorton. |
|---|---|
| MR. BASSETT:  | Objection.  This was all objected to in – – |
| THE COURT:    | It's the jury's recollection that will control. |
| MS. CLIFFORD: | And he told you from early on in the investigation based on the review of those records and interviews that this was a murder for hire, in his opinion, and that he never wavered from that.  Even after the arrest of all the people charged in this case, during their interrogation, their interviews, he never wavered from that. |

(Tr-2 633-34.)  The prosecutor was drawing inferences and presenting an argument based on testimony that was properly before the jury.  And, as such, the prosecutor's comment was fair argument and does not rise to the level of egregious misconduct.

Additionally, the argument made by the prosecutor was in direct response to an argument made by defense counsel during summation.  During the defense summation, defense counsel argued that Detective Rivera did not suspect that DiMartino's murder was actually a murder for hire.  (Tr-2 598-600.)  The prosecution was permitted to refer to Detective Rivera's testimony that supported that he believed this was a case of murder for hire from the beginning stages of the investigation to rebut defense counsel's argument.  Thus, even if the rebuttal comments made by the prosecutor were objectionable, "the prejudicial effect of such objectionable statements is diminished" as the comments were made in direct to response to defense counsel's argument. Keane, 2000 WL 1772653 at *3.

Finally, given all of the evidence at trial, Festus cannot show substantial prejudice as a result of the prosecutor's statements. Elias, 285 F. 3d. at 190 citing United Statas v. Shareef, 190 F.3d 71, 78 (2d Cir. (1999).

The prosecutor's remarks did not constitute egregious misconduct. As such, Festus is unable to demonstrate that the state courts' decision denying his improper summation claim was contrary to, or in violation of, established federal law or was w. an unreasonable determination of the facts. Accordingly, Festus's prosecutorial misconduct claim is denied in its entirety.

### 4.  Insufficient Evidence Claim

Festus argues that he is entitled to habeas relief for two reasons: (1) the evidence presented by the prosecution was legally insufficient, and thus failed to prove his guilt beyond a reasonable doubt of Murder in the First Degree, Murder in the Second Degree, or Conspiracy in the Second Degree; and (2) the evidence presented at trial was factually insufficient to support his conviction on the same charges, and thus was against the weight of the evidence. (Pet. at ECF 18.)  In his direct appeal, Festus raised only the legal insufficiency argument to the Second Department and the court denied his claim, finding that it was unpreserved for appellate review, and, in any event, was meritless. Festus, 138 A.D.3d at 1018. The Appellate Division denied Festus's claim on independent and adequate state grounds, and Festus has failed to show cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review. Therefore, Festus cannot overcome this procedural bar. See Coleman, 501 U.S. at 750. Moreover, both claims also fails on the merits.

As an initial matter, Festus's claim that the jury's verdict was against the weight of the evidence is not cognizable here as it does not raise a federal question. McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 F. App'x 69, 75 (2d Cir. 2011).

Because this claim is based solely on state law, it is unreviewable in a federal habeas corpus proceeding.  See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991), Butler v. Cunningham, 313 F. App'x 400, 401 (2d Cir. 2009); Smith v. Lee, No. 11-CV-0530, 2014 WL 1343066, at *10 (E.D.N.Y. Mar 31, 2014) ("[i]t is well settled that a 'weight of the evidence' claim is distinct from an 'insufficiency of the evidence' claim and is a state claim based on N.Y.C.P.L. § 470.15(5) that is not reviewable in a federal habeas proceeding.") (citing McKinnon, 422 F. App'x at 75).   Thus, Petitioner's weight of the evidence claim is not cognizable on habeas review, and is denied.

As to Festus's habeas claim based on the legal sufficiency of the evidence, he "bears a very heavy burden."  See United States v. Aguilar, 585 F.3d 652, 656 (2d Cir 2009).  A criminal conviction will not be disturbed if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); see also Policano v. Herbert, 507 F.3d 111, 115-16 (2d Cir. 2007) (stating that "[i]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt") (quoting Jackson, 443 U.S. at 324). When considering a claim of legally insufficient evidence, the facts are viewed in the light most favorable to the verdict.  See Garbutt v. Conway, 668 F.3d 79, 80-81 (2d Cir. 2012) (per curiam).   "In considering a petition for writ of habeas corpus based on insufficient evidence to support a criminal conviction in the state courts, a federal court must look to state law to determine the elements of the crime."  Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir. 1993).

Having considered each of the crimes for which Festus was convicted, the Court concludes that the Appellate Division's upholding of the convictions is neither contrary to, nor an unreasonable application of, clearly established federal law and its decision was not based on an unreasonable determination of the facts.

As mentioned above, Festus was convicted of one count of Murder in the First Degree, one count of Murder in the Second Degree and one count of Conspiracy in the Second Degree. Pursuant to the New York State Penal Law, "[a] person is guilty of murder in the first degree when, with intent to cause the death of another person, he causes the death of such person or to a third person; and the victim was killed while the defendant was in the course of committing or attempting to commit and in furtherance of a robbery." N.Y. Penal Law § 125.27(1)(a)(vii). "A person is guilty of murder in the second degree when, with intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 125.25(1). Additionally, "[a] person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct." N.Y. Penal Law § 105.15.

In his petition, Festus argues that the following problems surrounding the trial amounted to insufficient evidence: (1) the prosecution failed to prove that he made an agreement with the conspirators to participate in the conspiracy to commit murder; (2) the prosecution failed to prove that he murdered DiMartino in the act, and in furtherance of a robbery; and (3) the prosecution's case against him was based upon the false testimony of an accomplice. (See Pet. at ECF 18-19.)

This argument is meritless.  When the Court considers the trial record in its entirety, there is substantial evidence to support the jury's determination of Festus's guilt.  Over the course of the trial, the prosecution presented evidence via testimony of Monique Randall, Festus's co-conspirator in DiMartino's murder.  Randall testified to the steps that she, Thorton, Raysor, and Festus took in planning and executing Festus's death.  Specifically, that Festus and his co-conspirators met numerous times to discuss the murder, and Thorton agreed to pay ten thousand dollars in exchange for Raysor and Festus killing DiMartino.  (Tr-227-28.)  The day of the murder, Festus and his co-conspirators met at an I-HOP, drove to a McDonald's where Thorton gave Raysor and Festus a loaded revolver, then they selected a location to meet DiMartino.  (Tr-2 41-45.)  After picking the Sil La Joung restaurant, Festus and Raysor exchanged clothing at the Courtesy Inn Motel and walked to meet DiMartino.  (Tr-2 46.)  Randall saw Festus and DiMartino in the parking lot of Sil la Joung and gestured to Festus to "do it."  (Tr-2 48-50.)  As Randall walked back towards the motel room, she heard a gunshot.  (Tr-2 50-51.)  Festus returned to the motel room moments later with DiMartino's wallet and cell phone and told Raysor and Randall "I gave that motherfucker a permanent headache."  (Tr-2 51-53.)  The evidence demonstrates that Festus took DiMartino's wallet and cell phone by force, thus supporting that Festus murdered DiMartino in furtherance of a robbery.

Randall's testimony was also corroborated by the other evidence at trial.  Video surveillance captured Randall, Raysor, and Festus at both the Towne House Motor Inn and the Courtesy Motor Motel, both of which were located in close proximity to Shady Al's and where DiMartino was murdered.  Phone records confirmed that Thorton had been in contact with DiMartino the morning leading up to his death, demonstrating Thorton's role in orchestrating the murder plot.  The medical examiner confirmed that DiMartino was shot in the head, which was

the cause of death.  (Tr-2 182, 186.)  The bullet was recovered from DiMartino during his autopsy and was either a .38 or .357 caliber bullet, both of which are designed to be fired from a revolver.  (Tr-1 338-48.)  During his interview with police, Festus drew a sketch of the gun he used to shoot DiMartino, and he drew a revolver.  (Tr-2 321.)  The latent palm print from the Sil la Joung restaurant owner's Sable in the parking lot was a positive match for Festus, thus proving his presence there.  (Tr-2 219-20.)  Festus's own statements demonstrate his participation in the conspiracy, that he took DiMartino's wallet, and he admitted that he shot DiMartino.  (Tr-2 274.)

Although Festus points to discrepancies in Randall's testimony, he has not met the high burden of demonstrating that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Flowers v. Fisher, 296 F. App'x 208, 210 (2d Cir. 2008) (quoting Jackson, 433 U.S. at 324) (internal quotation marks omitted).  Ultimately, "[f]ederal habeas courts are not free to reassess fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review [the] Court must presume that the jury resolved any questions of credibility in favor of the prosecution."  Anderson v. Senkowski, No. CV-92-1007, 1992 WL 225576, at *3 (E.D.N.Y. Sept. 3, 1992) (internal citations omitted).

Accordingly, Festus's insufficient evidence claim is without merit and is denied.

**5. Ineffective Assistance of Counsel Claim**

Festus claims he received ineffective assistance from trial counsel.  He asserts what he perceives as numerous errors and failures by his trial counsel, including: (1) failure to object to improper comments made during the prosecution summation; (2) failure to move to dismiss the charges against him for lack of corroboration of the accomplice testimony; (3) failure to object on the grounds that he was denied his Sixth Amendment right to confront witnesses; (4) failure

to request a hearing for probable cause; (5) failure to argue that his <u>Miranda</u> rights were violated[13]; and (6) failure to call any defense witnesses.  (Pet. at ECF p. 15-16.)

As a general principle, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland v. Washington</u>, 466 U.S. 668, 689 (1984).  After all, "there are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." <u>Id.</u> In reviewing the totality of the evidence, the Court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 13 (2013) (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011)).  Bearing in mind this deferential standard, it is no surprise that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail.  <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001).

To establish deficient performance, a petitioner must prove that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. But even if the petitioner can show deficient performance, he must also establish prejudice – that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id</u>. at 694.

As an initial matter, Festus has not fully exhausted all of his ineffective assistance of counsel claims.  In his second C.P.L. § 440.10 motion, Festus raised the following alleged failures by counsel:  (1) failure to request a probable cause hearing; (2) failure to argue that his <u>Miranda</u> rights were violated; and (3) failure to call any defense witnesses. (<u>See</u> 2nd Mot. to Vacate J., at ECF pp.)  The motion was denied.  Festus did not seek leave to appeal from the

---

[13] Festus's claim that counsel was ineffective for failure to argue that his <u>Miranda</u> rights were violated when he was silent in response to a line of questioning is addressed <u>supra</u>, and, as such, it is not addressed here.

denial of this motion, and the time to do so has long since expired.  See C.P.L. § 460.10(4)(a) (providing 30 days to seek leave to appeal); Collazo v. Lee, No. 11-CV-1804, 2011 WL 6026301, at *3 (E.D.N.Y. Dec. 2, 2011) ("Under New York law, a defendant has thirty days to appeal a denial of a § 440 motion") (citing CPL § 460.10(4)(a) ).  Given Festus's failure to appeal the county court's denial of his second motion to vacate, the claims raised in that motion are now deemed to be exhausted, but procedurally barred.  See Collazo, 2011 WL 6026301, at *3 (finding claim to be "exhausted, but ... deemed procedurally barred from federal habeas review" when petitioner failed to seek to leave to appeal the denial of his § 440.10 motion).[14]

In his petition, Festus fails to show cause, prejudice, or that a fundamental miscarriage of justice would result if he is barred from habeas review on these three ineffective assistance of counsel claims; therefore, Festus cannot overcome this procedural bar.  See Coleman, 501 U.S. at 750.

On his direct appeal, Festus properly exhausted the following claims that counsel was ineffective due to failures including: (1) failure to object to improper comments made during the prosecution summation; (2) failure to move to dismiss the charges against him for lack of corroboration of the accomplice testimony; (3) failure to object on the grounds that he was denied his Sixth Amendment right to confront witnesses.  (See Supp. App. Div. Br, at ECF pp. 87-105.)  The Second Department held that Festus "failed to establish that he was denied the effective assistance of counsel."  Festus, 133 A.D. 3d at 878.  The New York State Court of

---

[14] There is a split of authority amongst district courts in the Second Circuit over whether the failure to seek leave to appeal the denial of a § 440.10 motion renders the claims therein to be deemed exhausted, but procedurally barred. See Small v. Diforilo, No. 12-CV-5583, 2016 WL 9737929, at *19 (S.D.N.Y. Sept. 9, 2016) (report and recommendation), adopted sub nom. Small v. Chappius, No. 12-CV-5583, 2017 WL 4342132 (S.D.N.Y. Sept. 28, 2017) (discussing split of authority).  Even if Festus's claims were considered unexhausted and not procedurally barred, Festus's claims would still be denied as they are substantively meritless.

Appeals denied Festus's request for leave to appeal, and his motion for reconsideration.  Festus, 27 N.Y.3d at 996; Festus, 27 N.Y. 3d at 1131.

Despite the fact that three of Festus's six ineffective assistance of counsel claims are procedurally barred, the Court still addresses all claims on the merits.[15]

### a.  Failure to Object to Prosecution Summation Claim

Festus alleges that counsel failed to object to prosecutorial misconduct during the prosecution summation.  (Pet. at ECF p. 15.)  Petitioner articulates two incidents of improper commentary by the prosecution to substantiate his claim, including: (1) vouching for and bolstering Cha'kre Rich's testimony; and (2) making inappropriate and inflammatory comments. (Pet. at ECF p. 15.)  For the following reasons, this claim is denied.

As an initial matter, and with respect to the second alleged incident of improper summation commentary, it is unclear from the petition which comments Festus argues are inappropriate and inflammatory.  However, using Festus's prosecutorial misconduct claim as a guide, the Court construes Festus' petition as asserting the argument that the prosecutor committed misconduct by introducing a financial motive behind the murder for hire plot during summation.[16]  First, defense counsel did not fail to object to the prosecution comments Festus alleges were improper.  After the prosecutor argued that Detective Rivera believed this case a murder for hire, defense counsel objected, and the trial court ruled that it was the jury's recollection that would control.  (Tr-2 633.)  Thus, Festus is unable to demonstrate that defense

---

[15] Despite Festus's failure to exhaust three of his ineffective assistance of counsel claims—namely: (1) failure to request a probable cause hearing; (2) failure to argue that his Miranda rights were violated; and (3) failure to call any defense witnesses—given that the county court denied these three claims, there is a strong argument that this ruling is entitled to AEDPA deference.  Even if these claims are not entitlted to AEDPA deference, these three claims are plainly meritless, as discussed infra.

[16] Festus also raised this as an independent claim on direct appeal, and argued that the prosecution committed misconduct by introducing a financial motive for the murder.  See App. Div. Br., at pp. 30-31.

counsel's performance was deficient. Additionally, as stated earlier, the Court finds that the prosecutor's summation comments regarding the financial motive for the crime did not amount to egregious misconduct, and, thus, did not result in actual prejudice. Accordingly, Festus has also failed to meet Strickland's second prong with respect to this branch of his ineffective assistance of counsel claim.

With respect to Festus's second argument regarding alleged comments made to bolster and vouch for Rich's testimony, namely that she had nothing to gain by testifying, the Court also finds that claim is without merit. First, the Court does not find that the comments made by the prosecutor regarding Rich's testimony were improper. The prosecution is permitted to rebut arguments raised during a defendant's summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" Senkowski, 1998 WL 720682, at *13. "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." Keane, 2000 WL 1772653 at *3. During the defense summation, counsel made numerous arguments regarding the quality of Rich's memory and the fact that she testified that she had been drinking alcohol the night she interacted with Festus. (Tr-2 584-587.) Therefore, the prosecution was permitted to rebut defense counsel's argument and present arguments to the jury to demonstrate why Rich's testimony was reliable, specifically by arguing that Rich had nothing to gain by testifying falsely. (Tr-2 640-41.) As such, the prosecution summation comments were proper and were made in direct response to defense counsel's summation arguments.

Further, it is well settled under Strickland that "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner

47

[i]s entitled." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir.2001). "The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance." <u>Hicks v. Ercole</u>, 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015) (citing <u>United States v. Regalado</u>, 518 F.3d 143, 150 n. 3 (2d Cir. 2008)). Similarly, "counsel [does] not render ineffective assistance by failing to make [an objection that would have been overruled as baseless]." <u>Johnson v. Rivera</u>, 07-CV-0334, 2010 WL 1257923, at *9 (N.D.N.Y. Mar. 25, 2010) (citing <u>United States v. DiPaolo</u>, 804 F.2d 225, 234 (2d Cir.1986)). Here, Festus is unable to demonstrate that defense counsel's conduct constituted deficient performance. Further, Festus fails to show prejudice as a result of defense counsel not objecting to the prosecution summation.

As such, the Court finds that the state court's ruling is not contrary to, or an unreasonable application of, <u>Strickland</u>, and, thus, Festus's claim that defense counsel was ineffective for failing to object to the prosecution summation is denied habeas relief.

### b. Failure to Move to Dismiss Claim

Festus asserts he was denied effective assistance of counsel because his trial counsel failed to move to dismiss on the grounds that Randall's accomplice testimony was insufficiently corroborated. (Pet. at ECF p. 15.) Petitioner's is unable to demonstrate either deficient performance or prejudice, and, thus, his claim is denied habeas relief.

Under New York law, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. Law § 60.22(1). Thus, Festus's claim is grounded in the assumption that, if defense counsel had moved to dismiss the charges against him based on the lack of corroborative non-accomplice testimony, the trial court would have dismissed the charges. However, there is nothing to suggest that dismissal would

have resulted from such a motion to dismiss.  During trial, the prosecution offered an abundance of non-accomplice corroborative evidence and testimony that connected Festus to DiMartino's murder plot.  As discussed further with respect to Festus's insufficient evidence claim, the prosecution offered into evidence video surveillance from both motels where Festus and the co-conspirators stayed, video surveillance of the meeting at I-HOP, phone records, Rich's testimony, and Festus's own statements to police.

It is well settled that under <u>Strickland</u> that "the failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which Petitioner [i]s entitled." <u>Aparicio</u>, 269 F.3d at 99. Here, Festus fails to demonstrate that defense counsel's performance was deficient.  Additionally, any potential prejudice was ameliorated by the trial court's jury instruction regarding accomplice testimony, wherein the court explained that, as an accomplice, Randall's testimony required corroboration in order to convict Festus of the crimes charged.  (Tr-2 689-90.)

Accordingly, the Second Department's determination was not contrary to, or an unreasonable application of, the <u>Strickland</u> standard, and Festus's request for habeas relief on this basis must be denied.

### c.  Failure to Object Claim

Festus also claims that defense counsel was ineffective because counsel failed to object to Randall's testimony on hearsay grounds and for violating Festus's Sixth Amendment right to confront the witnesses against him.  (Pet. at ECF p. 15.)  Festus, once again, raises an ineffective assistance of counsel claim on the grounds that counsel failed to make a baseless objection or argument, and, again, his claim is denied.

As discussed supra, the portions of Randall's testimony that included out-of-court statements by co-conspirators Thorton and Raysor are considered non-testimonial evidence, and, thus, did not violate his Sixth Amendment rights to confrontation.  Crawford, 541 U.S. at 68 (finding that most hearsay exceptions applied to "statements that were by their nature not testimonial – for example, business records or statements in furtherance of a conspiracy.").  Further, statements made by a co-conspirator being offered at trial against a defendant is a long recognized hearsay exception in both New York state and federal court.  See Salko, 47 N.Y.2d 230; Fed. R. Evid. §801(d)(2).  Further, a co-conspirator's out-of-court statements may be used to establish the existence of the underlying conspiracy.[17]  Bourjaily, 483 U.S. at 179-80.  As such, Festus's underlying argument that his Sixth Amendment rights were violated is without merit, and his argument that counsel was ineffective failure to make a baseless objection is similarly without merit.

Petitioner is unable to demonstrate that defense counsel's performance was deficient, or that he was prejudiced by counsel's failure to object on baseless grounds.  Accordingly, Petitioner's ineffective assistance claim for failure to object is denied.

### d.  Failure to Request a Probable Cause Hearing Claim

Festus argues that he entitled to habeas relief on the grounds that trial counsel erroneously failed to request a probable cause hearing, known as a Dunaway hearing in New York state courts.  (Pet. at ECF p. 15-16.)  The Court disagrees.

---

[17] Under New York State law, once a prima facie case of conspiracy is established, a co-conspirator's statements are admissible against a defendant, and the statements may be admitted into evidence before the prima facie case of conspiracy is proven so long as it is proven by the close of trial.  See People v. Caban, 5 N.Y.3d 143, 151 (2005).  As such, even under the New York State law, the statements made by co-conspirators were admissible and any objection by defense counsel would have been baseless.  Additionally, there was ample independent evidence of conspiracy to establish a prima facie without even resorting to the co-conspirator statements.

!    In Dunaway v. New York, the Supreme Court held that the police violated the Fourth and Fourteenth Amendments when, without probable cause to arrest, police seized the petitioner and transported him to the precinct for interrogation.   Dunaway v. New York, 442 U.S. at 202, 216 (1979).  Thus, a Dunaway hearing is used to determine whether a statement or other intangible evidence obtained from a person arrested without probable cause should be suppressed at a subsequent trial.  Dunaway, 442 U.S. at 216; see also N.Y. Crim. Proc. Law § 710.60.

Apart from his own opinion that his arrest was without probable cause and counsel should have moved for a Dunaway hearing, Festus has not suggested that there were any potentially meritorious bases on which such a suppression motion could have been premised, and, based on the evidence, there is no reasonable probability that such a hearing would have been successful.  The only support Festus provides for his argument is an allegation in his petition that the detectives in this case admitted, during cross examination, that there was no evidence linking Festus to crime at the time of his arrest.  (Pet. at ECF p. 15.)  However, while it is unclear which detective Petitioner is referring to, at the time Festus was arrested, lead investigator Detective Rivera had already:  (1) collected video surveillance evidence and phone records; (2) interviewed Randall, who identified Festus in video surveillance tapes as being involved in the conspiracy; and (3) had a positive palm print identification from the Sable parked in the Sil la Joung parking lot.  (Tr-2 259.)  As such, there is little likelihood that Festus would have succeeded at a probable cause hearing.

Thus, Festus has failed to show how he was prejudiced by defense counsel's decision in this regard not to request such a hearing.  Accordingly, Petitioner's ineffective assistance claim for failure to request a probable cause hearing is denied.

### e.   **Failure to Call Witnesses Claim**

Last, Festus argues that trial counsel's performance was deficient for failure to call any witnesses on his behalf, or to present a defense.  (Pet. at ECF p. 16.)  The Court finds that this claim lacks merit, and is denied.

"The decision of whether to call any witnesses on behalf of a defendant, and which witnesses to call or omit to call, is a tactical decision which ordinarily does not constitute incompetence as a basis for a claim of ineffective assistance of counsel." Blond v. Graham, 12–CV–1849, 2014 WL 2558932, at *10 (N.D.N.Y. June 6, 2014) (internal quotation marks omitted) (citing Speringo v. McLaughlin, 202 F.Supp.2d 178, 192 (S.D.N.Y.2002) and United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987)).  Further, "[s]uch a claim is disfavored in habeas review because allegations of what a witness would have testified are largely speculative." Speringo, 202 F.Supp.2d at 192 (internal quotation marks and citations omitted).  Thus, Festus cannot demonstrate that trial counsel's performance was deficient.

Here, Petitioner alleges trial counsel should have called at least an expert witness to rebut the testimony of the prosecution's expert witness.  (Pet. at ECF p. 16.)  At trial, the prosecution called a number of witnesses who were experts in different fields and who testified about various scientific, medical, and technical matters.  In his petition, Festus does not specify which expert he believes trial counsel should have presented a defense expert to rebut.  Further, it is pure speculation that any such hypothetical defense expert would have actually rebutted testimony from any of the prosecution expert witnesses.  Additionally, it is unclear what prejudice was caused by failure to present any defense expert witnesses.

The Court finds the trial court's rejection of Petitioner's failure to call witnesses claim on the merits was not contrary to, or an unreasonable application of, the <u>Strickland</u> standard. Festus's request for habeas relief on this basis is denied.

Accordingly, Petitioner cannot demonstrate that defense counsel's performance was deficient, or that he was prejudiced pursuant to <u>Strickland</u>, and, as such, all Festus's ineffective assistance of counsel claims are denied on this basis and in their entirety.

### III. CONCLUSION

Because the Court has considered all of Festus's arguments and found them meritless, the petition is DENIED. A certificate of appealability shall not issue because Festus has not made a substantial showing that he was denied any constitutional rights. <u>See</u> 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order would not be taken in good faith, and thus <u>in forma pauperis</u> status is denied for the purposes of any appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to mail a copy of this Order to petitioner and to close the case.

**SO ORDERED.**

Dated:  November 30, 2020
Central Islip, New York

 _____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE